UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| BOBBETTE PIGUE,<br><br>             Plaintiff,<br><br>       v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>             Defendant. | No. CV 07-02489-VBK<br><br>MEMORANDUM OPINION<br>AND ORDER<br><br>(Social Security Case) |

Bobbette Pigue (hereinafter referred to as "Plaintiff") filed a Complaint on April 16, 2007 seeking reversal of the Decision of the Commissioner of Social Security ("Commissioner") denying her application for disability benefits and Supplemental Security Income ("SSI") benefits.

Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. This action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed their pleadings and supporting memoranda, and the Commissioner has filed a Certified Administrative

Record ("AR"). This Memorandum Opinion will constitute the Court's findings of facts and conclusions of law.

After reviewing the matter, the Court concludes that for the reasons to be set forth, the decision of the Commissioner must be reversed.

Plaintiff disputes the determination of the Administrative Law Judge ("ALJ") that there exists occupations in significant numbers which she can perform. She breaks this down into two parts. First, that the ALJ erred in determining that she can perform the occupations which he identified at Step Five because, she asserts, her residual functional capacity ("RFC") precludes her from performing detailed work, which is a requirement of these jobs. Second, she asserts that the ALJ erred by failing to properly determine whether the identified jobs exist in significant numbers as required by 20 C.F.R. §§404.1566 and 416.966.

Relying upon the psychiatric consultative evaluation ("CE") of Dr. Fontana, performed at the request of the Department of Social Services on November 24, 2004, the ALJ determined that Plaintiff is moderately limited in her ability to understand and remember detailed instructions and in her ability to carry out detailed instructions. He therefore limited her to non-detailed work. (AR 23, 151-155.)

Following a hearing on August 8, 2006, at which no appearance was made by either a vocational expert ("VE") or a medical expert ("ME") (AR 223-241), the ALJ determined that if Plaintiff had the RFC to perform the full range of light work, then considering her age, education and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21 [known as the "Grids"]. (AR 25.) The ALJ determined that, "However, the additional [e.g., mental]

1  limitations have little or no effect on the occupational base of
2  unskilled light work.  A finding of 'not disabled' is therefore
3  appropriate under the framework of this Rule." (AR 25.)  The ALJ then
4  expressly relied upon the opinions of State Agency vocational
5  consultants as to whether jobs exist in the national economy for a
6  person fitting Plaintiff's profile. (AR 25-26, 112-113.)  The ALJ
7  adopted the conclusions of these vocational consultants and found that
8  fifteen identified jobs exist which Plaintiff can perform. (AR 26,
9  112-113.)
10      Plaintiff asserts that the ALJ was required to call upon the
11 expertise of a VE.  The Commissioner contends that, alternatively, it
12 was appropriate for the ALJ to refer to the Grids, relying on the
13 Ninth Circuit case of Tackett v. Apfel, 180 F.3d 1094, 1100-1101 (9th
14 Cir. 1999), to support his contention.  While the Commissioner
15 recognizes that the ALJ may rely on the Grids only when they
16 accurately and completely describe a claimant's abilities and
17 limitations (JS at 11, citing Tackett, at 1102), and that significant
18 non-exertional impairments make reliance on the Grids inappropriate
19 (Id.), he then erroneously concludes that, "The fact that a non-
20 exertional limitation is alleged does not automatically preclude
21 application of the Grids." (JS at 11-12, citing Tackett at 1102.)
22 This might be true if substantial evidence supported the ALJ's
23 determination that Plaintiff's mental limitations have little or no
24 effect on the occupational base of unskilled light work. (See AR at
25 25.)  This conclusion, however, is unsupported by any expert
26 testimony, or for that matter, any evidence in the record.  It is
27 simply drawn out of thin air.  As explained by the Ninth Circuit in
28 //

3

1 Tackett,

2     "The Commissioner's need for efficiency justifies use
3     of the grids at step five where they *completely and*
4     *accurately* represent a claimant's limitations.  See id. at
5     461.  In other words, a claimant must be able to perform the
6     *full range* of jobs in a given category, i.e., sedentary
7     work, light work, or medium work."
8 (180 F.3d at 1101-1102.)(Emphasis in original.)

10     As the Court in Tackett noted, under the reasoning of Desrosiers
11 v. Secretary of Health and Human Services, 846 F.2d 573 (9th Cir. 1988)
12 the existence of a non-exertional limitation does not automatically
13 preclude application of the Grids.  This may be the case if, "the ALJ
14 ... first determine[s] if a claimant's non-exertional limitations
15 significantly limit the range of work permitted by his exertional
16 limitations."  See Desrosiers, 844 F.2d at 577.  The critical problem
17 in this case is that that determination is not supported by any
18 evidence in the record.  Consequently, the ALJ's reference to a
19 finding of "not disabled" based upon application of the Grid rules was
20 erroneous.

21     Plaintiff also argues that thirteen of the fifteen jobs
22 identified by the ALJ have an identified General Educational
23 Development ("GED") level of 2.  Pursuant to the Dictionary of
24 Occupational Titles ("DOT"), reasoning level 2 requires an ability to,

25     "Apply commonsense understanding to carry out detailed
26     but uninvolved written or oral instructions.  Deal with
27     problems involving a few concrete variables in or from
28     standardized situations."

1      Thirteen of the fifteen jobs require reasoning level 2. (See JS,
2 Exhibit ["Ex."] 1.)  The Commissioner cites Judge Larson's opinion in
3 Meissl v. Barnhart, 403 F.Supp.2d 981 (2005) in support of his
4 contention that it was appropriate to identify these occupations as
5 being available to Plaintiff based on her mental RFC because she had
6 the ability to carry out detailed but uninvolved written or oral
7 instructions as required by reasoning level 2.  The citation to Meissl
8 is misplaced, because in that case, the ALJ assigned the plaintiff an
9 RFC which allowed performance of simple tasks at a routine pace. (See
10 403 F.Supp.2d at 980.)  Thus, the issue was whether an individual
11 limited to performing simple tasks at a routine pace could perform
12 jobs at reasoning level 2.  Judge Larson concluded that this could be
13 the case.  But, in Meissl, testimony was taken from a VE.  Moreover,
14 the ALJ in this case precluded Plaintiff from performing detailed
15 work. (See AR at 23.)  Thirteen of the fifteen jobs require an ability
16 to carry out "detailed but uninvolved written or oral instructions."
17 There is nothing in the ALJ's opinion which carves out an exception
18 permitting Plaintiff to perform detailed but uninvolved work; rather,
19 the found limitation completely precludes detailed work.

20      The second part of Plaintiff's issue concerns whether the jobs
21 identified at Step Five exist in sufficient numbers.  In making this
22 determination, the ALJ relied upon an analyst from the State of
23 California, Health and Human Services Agency, who completed a check
24 the box form identifying the fifteen jobs. (AR 25-26, 112-113.)  The
25 form itself indicates that, "These jobs exist in significant numbers
26 throughout the economy. (Source: U.S. Dept. Labor's DOT, 4th Ed., '91
27 and SCO '93) (AR 113.)  Reliance upon this form was erroneous.  In
28 making a determination as to the existence of a significant number of

jobs in the national economy or in several regions of the country (see 20 C.F.R. §§404.1566 and 416.966), the ALJ may rely upon the testimony of a VE or, he may take administrative notice of any reliable job information, including information provided by a VE.  See Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995), Bayliss v. Barnhart, 427 F.3d 1211 (9th Cir. 2005).  The problem is that the DOT and companion publications do not contain information as to the number of available jobs.  Even if these sources did contain such information, reliance upon a 1991 edition of the DOT and a 1993 companion SCO publication could not be considered the type of reliable job information required to make this determination.

Based on the foregoing, the matter will be remanded for a new hearing. At that hearing, testimony will be taken from a VE to determine whether Plaintiff may be determined to be disabled or not disabled at Step Five of the sequential evaluation.

**IT IS SO ORDERED.**


DATED: January 17, 2008                    /s/
                                    VICTOR B. KENTON
                                    UNITED STATES MAGISTRATE JUDGE